UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| CASEY RHOADES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 3:19-cv-000019-GFVT-EBA |
| V. | ) | |
| | ) | |
| JOHN TILLEY, *et al*., | ) | |
| | ) | **MEMORANDUM** |
| Defendants. | ) | **OPINION** |
| | ) | **&** |
| | ) | **ORDER** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants John Tilley and James Erwins' Motions for

Summary Judgment.  [R.'s 49, 50.]  Both Defendants seek to have all counts alleged against

them dismissed.  For the reasons explained below, the Motions will be **GRANTED**.

**I**

Since 2011, if the Kentucky Department of Corrections classified an offender as "close

security" or "maximum," Ky. Rev. Stat. § 532.400(1)(b) allowed the Department to subject

offenders to one year of post-incarceration supervision after their sentence or parole expired.

Ky. Rev. Stat. § 532.400(1)(b) (2011).  Plaintiff Casey Rhoades, who was classified as "close

security," joined a group of inmates in a class action lawsuit challenging the constitutionality of

the Statute.  [R.'s 50-1, 50-2.]  The Franklin Circuit Court found the Statute unconstitutional and

issued a permanent injunction against the Department from further enforcement of the Statute.

The Circuit Court Judge further ordered the Department to release any prisoners being held

subject to the Statute.  The Department appealed the ruling and sought an emergency stay of the

Order, but a Kentucky Court of Appeals declined to grant the stay on October 31, 2018.  [R. 57-2.]  Within thirty minutes of receiving the Court of Appeals' decision, Department employees began the process of identifying and releasing those prisoners being held pursuant to Ky. Rev. Stat. § 532.400(1)(b).  [*See* R.'s 57-3. 57-4, 50-5.]

In March of 2019, Plaintiff brought the present class-action suit against the former Commissioner of the Kentucky Department of Corrections, James Erwin, Deputy Commissioner Randy White,[1] and the Secretary of the Justice and Public Safety Cabinet, James Tilley.  [R. 1.] Plaintiff brings Eighth and Fourteenth Amendment claims, as well as state-law false imprisonment claims against the Defendants related to the roughly twenty-seven hours in-between the Court of Appeals' Order and his subsequent release.  [*Id.*]

## A

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could

---

[1] In footnote 64 of his Response, Plaintiff explicitly abandoned all claims against Defendant Randy White.  [*See* R. 57 at n. 64] ("While Rhoades named White as a defendant based on a good faith belief in his responsibility, after conducting discovery, Rhoades no longer believes White was responsible for his overdetention and thus abandons all claims against White").  Accordingly, the Court will dismiss Defendant White from the case.

reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying the parts of the record that establish absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied its burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

## II

Plaintiff brings a host of federal and state claims against the Defendants. The Court will first address Plaintiff's federal constitutional claims against the Defendants and then turn to the state-law claims of false imprisonment.

**A**

When invoked, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In evaluating claims of qualified immunity, courts generally apply a two-step analysis. First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* Finally, once a defendant has raised the defense, "the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right.' " *Thomas v. Plummer*, 489 F. App'x 116, 119 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) ).

Plaintiff alleges various Constitutional violations pursuant to § 1983. "To state a claim under § 1983, a plaintiff must allege [1] the violation of [2] a right secured by the Constitution and laws of the United States, and must show [3] that the alleged violation was committed by a person acting under color of state law." *Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). As a preliminary matter, there is no dispute that Defendants were officials of the state when detaining Rhoades. The second element is met as well, "when a prisoner's sentence has expired, he is entitled to release." *Shorts*, 255 F. App'x at 52 (collecting cases); *see also Jones v. Tilley*, 764

Fed.Appx. 447, 449 (6th Cir. 2019).  Accordingly, only the first element remains, whether or not Defendants committed a violation.

Plaintiff alleges that both Defendants were deliberately indifferent to his release date. [R. 1.]  Further, he alleges that he is not bringing suit against the supervisors named under *respondeat superior*, which is not permissible in § 1983 cases, but rather claims they also were deliberately indifferent to his release date, which is a "stringent standard of fault," requiring that the supervisors knew their actions would lead to a constitutional right being violated. *Shorts*, 255 F. App'x at 53. In order to prove deliberate indifference, the plaintiff must:

> [1] first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. [2] Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. [3] Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Id.* at 54.

### 1

Both Defendants Tilley and Erwin move for summary judgment on Count I, arguing that they are shielded by qualified immunity.  In response, Mr. Rhoades asserts that both Tilley and Erwin meet the deliberate indifference criteria and that the "breadth of knowledge and lack of action is sufficient to establish a factual dispute that only a jury can decide." [R. 57 at 16–17.]

### a

As an initial matter, Plaintiff has failed to establish that Defendant Erwin had any specific knowledge about the KRS 532.400(1)(b) litigation, nor about the Kentucky Court of Appeals' October 31, 2019 Order.  Erwin's deposition lends no proof to the Plaintiff that Erwin had any

knowledge of the litigation.  [*See* R. 57-10.]  Further, the Court agrees with Erwin that the

knowledge of Allison Brown, an attorney for the Office of the Commissioner for the Department

of Corrections, may not be imputed to Erwin.  *See Farmer v. Brennan*, 511 U.S. 825, 840 –841

(1994) ("[T]he official must both be aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw that inference"); *see also Watkins*

*v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001).  Consequently, Rhoades has failed to

satisfy the first prong of the *Shorts* analysis as it pertains to Erwin and Erwin is entitled to

judgment as a matter of law on Count I.

**b**

The deliberate indifference claim alleged against Defendant Tilley, however, presents a

murkier question.  In a February 10, 2021 deposition, Tilley gave the following testimony:

> [Question] … were you aware of litigation surrounding this statute while you were
> secretary? [Answer] Yeah. I was -- it seemed like it -- actually, there was some
> litigation that arose prior to my appointment, and I fully expected it.  We talked
> openly in, probably -- if you went back and looked back at open committee
> meetings, or task force meetings, or implementation meetings, meaning, you know,
> we met to make sure the bill was being implemented.  Afterward, we talked openly
> about the possibility that it would be eventually struck down as unconstitutional.
> Again, it was worrisome to me, and many of us talked openly about that.
>
> [Question] Do you recall that coming up when you were secretary? [Answer] … it
> did -- it did make its way into -- to our -- you know, to our meetings, and there was
> some discussions at one point along the way, yes, and we were not surprised that it
> was, you know, struck down.

[R. 57-10 at 7.]

Tilley's deposition reveals that he knew of KRS 532.400(1)(b), worked on policy implementing

the statute, and had concerns regarding the legality of the statute.  Tilley goes on to state that: (1)

he was only made aware of the *specific* litigation surrounding KRS 532.400(1)(b) when the

statute was struck down as unconstitutional in the Circuit Court; (2) that he received legal

6

updates from the "general counsel and the legal team" on a weekly basis; and (3) that he was aware that the lower court's ruling was upheld on appeal.[2]  [R. 57-10 at 8.]  The fact that Tilley knew of the KRS 532.400(1)(b) litigation inbetween the Circuit Court's ruling and the Court of Appeals' affirmation shows that he had knowledge of the risk of potential unwarranted detentions.

Plaintiff's argument, however, is unpersuasive against the backdrop of the second and third *Shorts* factors.  Deliberate indifference requires proof that Tilley "disregarded a known or obvious consequence of his action [or inaction]."  *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal quotation marks omitted).  For example, a failure to act or to take ineffectual action can been shown where a prison official was put on notice and simply refused to investigate a prisoner's claim of sentence miscalculation,[3] and where a prisoner is improperly held past the completion of his sentence due to a prison records officer's failure to rectify a known issue.  *Sample v. Diecks*, 885 F.2d 1099, 1102–03 (3d Cir. 1989).  The abovementioned cases offer straightforward examples of how a prison official, such as a parole board official or a prison records official, may be considered deliberately indifferent in the course of their job duties.  Plaintiff's allegations, however, fail to show how Tilley was similarly deliberately indifferent.  Tilley's deposition makes clear that his job duties did not include personally effectuating the release of offenders from custody, nor supervising the staff of the office that was tasked with such duties.  [R. 57-10 at 9–17.]  Plaintiff has not offered proof of how his over-detention was a known or obvious consequence of Tilley's oversight or lack thereof.  Although Tilley may have had knowledge of the KRS 532.400(1)(b)

---

[2] Tilley mistakenly believed that the Circuit Court opinion was upheld by the Kentucky Supreme Court as opposed to the Kentucky Court of Appeals.  This discrepancy is of no consequence to this Court's opinion.  [R. 57-10 at 8.]

[3] *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985)

7

litigation, Plaintiff has not offered sufficient proof to satisfy the second or third factors of the *Shorts* analysis.  Consequently, Tilley is likewise entitled to summary judgment as to Count I.

## B

In Count II, Plaintiff alleges that "Defendants' procedures, or lack of procedures, for decreasing the risk of erroneous detention posed a significant risk to Rhoades['] … liberty interest."  [R. 1 at 6.]  Specifically, Plaintiff alleges that despite the Kentucky Court of Appeals' Order, Defendants failed to provide him a hearing regarding his detention and refused to release him.  [*Id.* at 5.]  To the extent that Plaintiff seeks to make allegations regarding the policies of the Kentucky Department of Corrections, Plaintiff has not alleged, with particularity, facts that demonstrate what, if anything, either Tilley or Erwin have done to violate his Fourteenth Amendment rights.  Further, as both Defendants note, Plaintiff has sued Tilley and Erwin in their personal capacities and any procedures for decreasing the risk for erroneous detention would have to be adopted by the Department, not either Defendant in their individual capacities.  *See Shorts*, 255 F. App'x at 58–59 (noting that an official-capacity claim is proper for failing to implement a required policy or process).

Plaintiff's assertion that he was denied a hearing regarding his confinement after the October 31, 2018 Court of Appeals Order is meritless.  As the record before the Court shows, the Department of Corrections began the process of releasing Plaintiff within thirty minutes of the Case Manager emailing the Court of Appeals' Order to the Department's attorney, Ms. Brown. [R. 49-2 at 4–5.]  Further, it would not have been the role of either Tilley or Erwin to process the request for such an administrative hearing had one been submitted.  [R. 49-6 at 5.]  Accordingly, both Tilley and Erwin are entitled to summary judgment on Count II.

8

**C**

In Count III, Plaintiff makes a series of allegations against both Defendants Tilley and Erwin.  [R. 1 at 7.]  Plaintiff claims that Defendant Tilley: (1) "encouraged Defendant Erwin's and White's deliberate indifference, in that he officially authorized, approved, or knowingly went along with his subordinates' unconstitutional conduct"; and (2) "knowingly refused to terminate a series of acts by Defendants Erwin and White, which he knew or reasonably should have known would cause his subordinates to be deliberately indifferent."  [*Id.*]  Plaintiff then goes on to make identical claims against Erwin as it relates to Erwin's subordinate, former-Defendant White.  [*Id.*]  These claims are easy to resolve, as this Court has already determined that neither Tilley nor Erwin acted with deliberate indifference.  Further, Plaintiff abandoned his claims against Erwin's subordinate, Randy White.  *See Jones v. Clark Cnty., Kentucky*, 959 F.3d 748, 761 (6th Cir. 2020) ("A prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor").  Consequently, both Defendants Erwin and Tilley are entitled to summary judgment as to Count III.

**D**

Lastly, Plaintiff alleges state law false-imprisonment claims against both Tilley and Erwin in their personal capacities.  [R. 1 at 8.]  In the State of Kentucky, false imprisonment is defined as being "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats, or otherwise."  *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 288 (Ky. App. 2009) (quoting *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424, 425 (Ky. App. 1977)).

As an initial matter, Count IV in Plaintiff's complaint embodies the kind of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a

9

complaint's sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (Plaintiffs need not provide "detailed factual allegations," but must advance "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "a formulaic recitation of the elements of a cause of action"). In their discretion, the Defendants decided to forego the motion to dismiss stage. The Court need not dismiss Count IV based on the insufficiency of the pleadings, however, as the false imprisonment claims fail as a matter of law.

## 1

As discussed *supra* at page 5, Plaintiff has failed to establish that Defendant Erwin had any specific knowledge about the KRS 532.400(1)(b) litigation, nor about the Kentucky Court of Appeals' October 31, 2019 Order. Erwin's deposition lends no proof to the Plaintiff that Erwin had any knowledge of the litigation. [*See* R. 57-10.] Nor may Attorney Allison Brown's knowledge of the litigation or the October 31, 2019 Order be imputed to Erwin. False imprisonment requires either "intentional restraint or willful detention or interference" and Plaintiff has failed to offer any proof that either: (1) Erwin was aware of the litigation or October 31, 2019 Order; or (2) that Erwin personally imprisoned Plaintiff. Consequently, Plaintiff has not offered any proof that Erwin had any personal involvement or awareness of Plaintiff's incarceration. *See Shorts*, 255 F. App'x at 58–59 (Finding that a claim of holding a prisoner beyond the term of his sentence against a sheriff, in his personal capacity, was without merit where there was no evidence that the sheriff had any personal involvement in holding the prisoner in custody, or was even aware that he was in custody). Erwin is entitled to summary judgment on Count IV.

**2**

Tilley's awareness, once again, changes the analysis but ultimately leads us to the same result.  As stated *supra* at pages 5–6, Tilley's deposition shows that he likely knew of the KRS 532.400(1)(b) litigation in-between the Circuit Court's ruling and the Court of Appeals' affirmation.  Thus, Tilley had knowledge of the risk of potential unwarranted detentions. Plaintiff's false imprisonment claim fails, however, where Tilley's qualified immunity begins. When sued in their individual capacities, qualified official immunity protects public officers from damages liability for good faith judgment calls made in a legally uncertain environment. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). The standard for applying qualified official immunity is set out as follows:

> Qualified official immunity (what officers enjoy when sued in their individual, rather than official, capacities) applies to negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Id.*

The "good faith" requirement is more accurately interpreted as a presumption that the official was, in fact, acting in good faith absent evidence of bad faith.  *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).  "Once the officer or employee has shown *prima-facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523; *see also Sloas*, 201 S.W.3d at 475.  First, Plaintiff has failed to show that it was either Tilley's job duties to personally effectuate the release of offenders from custody, or that he directly supervised the staff of the office that was tasked with such duties.  In fact, Tilley denies such duties in his deposition.  [*See* R. 57-10 at 23–

24.]  Even if Plaintiff had shown that Tilley's decisions as an official led to a delay in Plaintiff's release, Plaintiff has not shown any evidence nor even *alleged* that Tilley "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive ...."  *Sloas*, 201 S.W.3d at 475.  Consequently, even if Plaintiff had sufficiently plead his claim of false imprisonment, Tilley is protected by qualified immunity for the state-law claims.  Accordingly, Tilley is entitled to summary judgment as to Count IV.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant John Tilley's Motion for Summary Judgment [**R. 49**] is **GRANTED** as to Counts 1–4;

2. Defendant James Erwin's Motion for Summary Judgment [**R. 50**] is **GRANTED** as to Counts 1–4;

3. All claims against Defendant Randy White are considered **ABANDONED** and Defendant White is **DISMISSED** as a party to this action;

4. All pending motions are **DENIED as MOOT**;

5. This case is **STRICKEN** from the Court's active docket; and

6. The Court will enter an appropriate Judgment.

This the 24th day of August, 2021.

Gregory F. Van Tatenhove
United States District Judge